UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CARLA CAMPO O/B/O N.G.                      CIVIL ACTION

VERSUS                                       NO: 13-6263

CAROLYN W. COLVIN, ACTING                    SECTION: R(1)
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION

**ORDER AND REASONS**

Having reviewed the complaint, the parties' motions for summary judgment,[1] the applicable law, the Magistrate Judge's Report and Recommendation,[2] and the plaintiff's objections to the Magistrate Judge's Report and Recommendation,[3] the Court approves the Magistrate Judge's Report and Recommendation and adopts it as its opinion in addition to the following analysis. Thus, the Court DENIES the plaintiff's motion for summary judgment and GRANTS the Social Security Administration's cross-motion for summary judgment.

**I. BACKGROUND**

This action arises from claims the plaintiff, Carla Campo on behalf of her minor child, N.G., filed with the Social Security Administration ("SSA") for Supplemental Security Income ("SSI").[4]

---

[1]  R. Docs. 17, 18.

[2]  R. Doc. 19.

[3]  R. Doc. 20.

[4]  R. Doc. 19 at 1.

An administrative law judge ("ALJ") denied Campo's first claim, and Campo requested review by the SSA's Appeals Council.[5] At the same time, Campo filed another claim with the SSA for SSI, and the claim was granted.[6] Given the inconsistency between the ALJ's denial of the first claim, and SSA's grant of the second claim, the Appeal's Council vacated the ALJ's original decision, and consolidated the two claims for benefits for the ALJ's review.[7] The ALJ again denied Campo's claim.[8] Again, Campo requested review by SSA's Appeals Council, which denied the request.[9] Campo then brought this action pursuant to 405(g) of the Social Security Act, seeking judicial review of the final decision of the Commissioner of the SSA. Both parties moved for summary judgment. The Magistrate's Report and Recommendation recommends that the Court grant summary judgment in favor of the SSA.

## II. LEGAL STANDARD

"Our review of the Commissioner's decision is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner

---

[5] *Id.* at 2.

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

applied the proper legal standard." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)) (quotation marks removed). The Court accepts an ALJ's findings if they are supported by substantial evidence, regardless of whether other findings would also be permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992).

**III. DISCUSSION**

Campo objects to the Magistrate Judge's Report and Recommendation ("R&R") for a number of reasons. Specifically, Campo objects to the R&R's findings related to the ALJ's determination that N.G. does not meet Listing 103.03 for asthma, the ALJ's alleged failure to follow the Appeals Council's remand order, the ALJ's failure to include Dr. McFarlain's records in the record, and the ALJ's determination that N.G.'s impairments did not functionally equal a listed impairment.

**A. ALJ's Determination that N.G. Does Not Meet Listing 103.03 for Asthma**

First, Campo contends that the Magistrate Judge "assumes away the corticosteroid requirement" of Listing 103.03.[10] Campo

---

[10] R. Doc. 20 at 2.

misconstrues the R&R. The R&R states clearly that even if the corticosteroid requirement is met, there is still substantial evidence to support the ALJ's finding that N.G. does not meet the Listing requirements for 103.03(C)(2).[11] This reasoning does not "assume away" the requirement, and, instead, shows that even if the requirement is met, it does not overcome the substantial evidence supporting the ALJ's finding.

Second, Campo contends that the Magistrate Judge's finding is limited to the wheezing requirement of 103.03(C) and ignores the "absence of extended symptom-free periods...."[12] Again, Campo misconstrues the R&R. The Magistrate Judge relies on the ALJ's findings that the evidence tending to show *both* the existence of chronic and marked respiratory symptoms and persistent low-grade wheezing was insufficient.[13]

Third, Campo contends that the Magistrate Judge erred by accepting the Commissioner's assertion "that five abnormal respiratory examinations over 39 months ..., even when combined with four occasions where subjective complaints of wheezing are noted and one visit in February 2012 to the ER for pneumonia, are insufficient to demonstrate persistent low grade wheezing."[14] Campo

---

[11]   R. Doc. 19 at 31.

[12]   R. Doc. 20 at 2.

[13]   R. Doc. 19 at 29-31.

[14]   *Id.* at 31.

4

argues that this is a *post hoc* reason for upholding the ALJ's determination because the ALJ did not include the subjective complaints in his analysis of whether N.G. suffered persistent low grade wheezing.[15] Because this is a *post hoc* reason not outlined in the ALJ's decision, as Campo argues, Campo contends that the Court must reject it.[16] While it is true that the Court may not justify the ALJ's decision based on a *post hoc* reason not outlined in the ALJ's decision, *see Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000), this is not that situation. Here, the Magistrate Judge does not supply a *post hoc* reason for the ALJ's decision, but instead merely bolsters her finding that the ALJ's determination was supported by substantial evidence. The Magistrate Judge highlights that even if the ALJ treated the subjective complaints as equivalent to objective evidence of persistent low grade wheezing, the evidence is still insufficient to support Campo's claim. In other words, the Magistrate Judge demonstrates that no interpretation of the evidence-even one affording more weight to the subjective complaints-supports Campo's claim. Moreover, the ALJ's determination already rested on substantial evidence. The ALJ found insufficient support in the record to find that N.G. suffered persistent wheezing and abnormal respiratory examinations, and specifically noted that these records were insufficient because

---

[15] *Id.*

[16] R. Doc. 20 at 2-3.

5

they were not supported by the objective medical record.[17] Therefore, Campo's contention that this is a *post hoc* reason for upholding the ALJ's determination is without merit.

Fourth, Campo contends that the ALJ's findings are based on an incorrect legal standard because he relied on the absence of objective medical evidence, which Campo argues is not required by Listing 103.03.[18] While Listing 103.03 may not expressly require objective medical evidence, an ALJ may discount a plaintiff's subjective complaints when the alleged symptoms are not consistent with the objective medical evidence. *See Quijas v. Astrue*, 298 F. App'x 391, 393 (5th Cir. 2008) (citing *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001)). Credibility determinations of this sort rest primarily with the ALJ because they are "precisely the kinds of determinations that the ALJ is best positioned to make." *Spruill v. Astrue*, 299 F.App'x 356, 358 (5th Cir. 2008) (quoting *Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994)). Here, the ALJ discounted the subjective complaints of wheezing in the record because they were not supported by the objective medical record, and therefore, in the ALJ's mind, were not credible.[19] The Court does not find error in the ALJ's reliance on the absence of objective medical records.

---

[17] R. Doc. 16-2 at 31.

[18] R. Doc. 20 at 3.

[19] R. Doc. 16-2 at 31.

Fifth, Campo contends that the ALJ's finding were based on an incorrect legal standard because the ALJ stated that the evidence was insufficient to show "chronic and marked respiratory symptoms," when Listing 103.03 does not require this showing.[20] Instead, Campo contends that Listing 103.03 requires only a showing of "[p]ersistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators ... [s]hort courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12-month period...." Again, Campo misconstrues the ALJ's findings. The ALJ's reference to this alleged incorrect legal standard occurrs only in reference to his assessment of Dr. Stanley's "medical source statement."[21] Specifically, the ALJ found that Dr. Stanley's records are "insufficient to support the existence of the chronic and marked respiratory symptoms *asserted* in the medical source statement."[22] Clearly, the ALJ does not apply "chronic and marked respiratory symptoms" as a legal standard, but instead, only references it in relation to Dr. Stanley's assertions. This objection is without merit.

---

[20] R. Doc. 20 at 3.

[21] R. Doc. 16-2 at 22.

[22] *Id.* (emphasis added).

7

**B. ALJ's Failure to Make Dr. McFarlain's Evaluation Part of the Record**

Campo objects to the R&R on the basis that the Magistrate Judge erred in finding that the ALJ's failure to include Dr. McFarlain's opinion in the record was harmless.[23] The Magistrate Judge in the R&R concludes that this failure was harmless error because the evidence relied on by Dr. McFarlain was also before the ALJ, and therefore, Dr. McFarlain's opinion would not have changed the ALJ's decision.[24] In *Ripley v. Chater*, the Fifth Circuit stated that reversal is only appropriate where the ALJ fails to develop the record fully and fairly when "the applicant shows that he was prejudiced." 67 F.3d 552, 557 (5th Cir. 1995). Prejudice is shown where "additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Id.* at 557 n.22. Here, Campo makes no showing that the inclusion of Dr. McFarlain's opinion might have led to a different decision. As such, the Court rejects this objection.

In her objection, Campo, for the first time, also argues that the ALJ's failure to include Dr. McFarlain's opinion was in violation of 20 C.F.R. 416.927(c). Because Campo did not raise this argument before the Magistrate Judge, the Court will not consider

---

[23] R. Doc. 20 at 5.

[24] R. Doc. 19 at 38.

8

this objection. *See Rodriguez v. Apfel*, 139 F.3d 898, *3 (5th Cir. 1998) ("The general rule is that issues raised for the first time in objections to a magistrate judge's report are deemed not properly before the district court, and therefore cannot be raised on appeal.") (citing *Cupit v. Whitley*, 28 F.3d 532, 535 n.5 (5th Cir. 1994)). *See also Requena-Rodriguez v. Pasquarell*, 190 F.3d 299, 307 n.27 (5th Cir. 1999) (noting that a district court has the "power to decide that legal arguments not raised before a magistrate judge are waived").

**C. ALJ's Alleged Violation of the Appeals Council's Order**

First, Campo objects to the R&R on the basis that the Magistrate Judge failed to find error in the ALJ's alleged violation of 20 C.F.R. 416.1436 (2012).[25] The Court finds Campo's objection regarding the ALJ's use of a telephone to obtain testimony without merit for the reasons provided by the Magistrate Judge in the R&R.[26]

Second, Campo objects to the Magistrate Judge's finding that the ALJ did not depart from the Appeals Council's order.[27] Campo contends that the Appeals Council's order mandated that the ALJ, on remand, obtain evidence from a psychologist or psychiatrist, and

---

[25] R. Doc. 20 at 6.

[26] *Id.*; R. Doc. 19 at 31-32.

[27] R. Doc. 20 at 6.

9

that by failing to obtain such evidence, the ALJ failed to comply with the Appeals Council's order.[28] Contrary to Campo's argument, the Appeals Council's order remanding the claim "for updated medical evidence, treatment records, and evidence from a psychologist or psychiatrist and an internist" is qualified by the later language stating that the ALJ will "if necessary, obtain evidence from a medical expert (psychologist or psychiatrist and an internist) to clarify the nature and severity of the claimant's impairment...."[29] For this reason, Campo's contention that the order required the ALJ to obtain testimony from a psychologist or psychiatrist is without merit. Moreover, even if Campo is correct that the ALJ failed to follow the Appeals Council's order, Campo fails to show prejudice. Campo conclusorily states that the lack of psychiatric or psychological testimony was prejudicial.[30] This is insufficient.

**D. ALJ's Determination that N.G.'s Impairments Did Not Functionally Equal a Listed Impairment**

First, Campo objects to the R&R on the basis that the Magistrate failed to recognize the ALJ's error in relying on the testimony of a non-treating, non-examining physician, Dr. Amusa,

---

[28] *Id.*

[29] R. Doc. 16-3 at 27.

[30] R. Doc. 20 at 7.

and rejecting the opinion of a treating physician, Dr. Dowling.[31] Specifically, Campo disagrees with the Magistrate Judge's finding that the ALJ had "good cause" to reject Dr. Dowling's opinion in favor of that of Dr. Amusa, a non-treating, non-expert physician.[32] This objection is without merit. As an initial matter, the Court notes that the ALJ did not reject Dr. Dowling's opinion, but instead merely afforded it less weight. The ALJ afforded Dr. Dowling's opinion, specifically the opinion provided in an attorney-prepared check-the-box form, "little weight as it is inconsistent with and unsupported by the objective medical and school evidence of record, including his own progress notes."[33] In *Newton v. Apfel*, the Fifth Circuit stated that "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." 209 F.3d 448, 456 (5th Cir. 2000). Under this standard, the ALJ did not err by affording Dr. Dowling's opinion little weight.

Furthermore, Campo fails to show that the ALJ's failure to apply 20 C.F.R. § 416.927(c)'s factors resulted in reversible

---

[31] *Id.* at 8.

[32] *Id.*

[33] R. Doc. 16-2 at 23.

error. Under *Newton*, even where good cause exists to give less weight to a treating physician's opinion, the "ALJ must consider the following factors before declining to give any weight to the opinions of a treating doctor: length of treatment, frequency of examination, nature and extent of relationship, support provided by other evidence, consistency of opinion with record, and specialization." *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001) (citing *Newton*, 209 F.3d at 458). Here, while the ALJ explained in detail his rationale for affording Dr. Dowling's opinion less weight, the ALJ did not expressly refer to these six factors. Under the Fifth Circuit's guidance in *Newton*, it is unclear, when good cause exists, whether an ALJ must apply the six-factor test when he declines to afford a treating physician's opinion controlling weight, or instead only when he flatly rejects a treating physician's opinion.[34] Under the latter interpretation, the ALJ would not be required to apply the six-factor test in this case because he had good cause to afford Dr. Dowling's opinion less weight, and still considered it fully, as opposed to rejecting it. Even assuming the ALJ was required to apply the six factors, any

---

[34] *Compare Jones v. Astrue*, 821 F. Supp. 2d 842, 852 (N.D. Tex. 2011) (finding that because "the ALJ did not entirely reject [the treating physician's opinion and] instead properly gave it less weight [it] therefore did not need to perform the six-step analysis discussed in *Newton*") *with M.P.B. v. Astrue*, No. 12-cv-0088, 2013 WL 869385, at *5 (W.D. La. Feb. 11, 2013) (holding that "it is not only when the ALJ elects to give no weight to the opinion of the treating physician that *Newton* and the regulations require the six-factor analysis").

error committed by the ALJ was harmless. The ALJ explained in detail how Dr. Dowling's opinion was unsupported by the record, and how Dr. Dowling's opinion was inconsistent with his own records. In doing so, it appears that the ALJ afforded less weight not to Dr. Dowling's records as a whole, but instead merely to Dr. Dowling's opinions in the attorney-prepared check-the-box form. It is clear from the ALJ's extensive review of the record that the ALJ also acknowledged the remaining factors, including the duration and frequency of N.G.'s treatment with Dr. Dowling and Dr. Dowling's specialty. Furthermore, the ALJ noted that Dr. Dowling's opinion was contradicted by the objective tests performed by Dr. Clark. Given the lack of support in the record for Dr. Dowling's opinion, the ALJ's extensive review of the record, including all of Dr. Dowling's notes, and the existence of objective testing contradicting Dr. Dowling's opinion, the Court is convinced that application of the six-factor test outlined in *Newton* would not have caused the ALJ to reach a different conclusion either as to whether Dr. Dowling's opinion should be afforded greater weight or whether N.G. met the requirements for a listed impairment. For this reason, even if the ALJ erred in not applying the six-factor test, the Court declines to remand this case to the ALJ because Campo suffered no prejudice.

Second, Campo objects to the R&R on the basis that the Magistrate Judge failed to recognize that the ALJ erred by failing

13

to make Dr. McFarlain's opinion part of the record, and by not recognizing the support for Dr. Dowling's opinion contained in the teacher reports.[35] Campo's objections are essentially recitations of the arguments contained in her motion for summary judgment.[36] The Magistrate Judge already addressed these arguments, and the Court agrees with the reasoning provided in the R&R.[37]

Third, Campo objects to the R&R because it fails to recognize the ALJ's alleged error in finding that N.G. has less than marked limitations in acquiring and using information based on N.G.'s improvements with medication and accommodations at school.[38] In support, Campo cites SSR 09-1p, which provides that "[t]he more help or support of any kind that a child receives beyond what would be expected for children the same age without impairments, the less independent the child is in functioning, and the more severe we will find the limitation to be." *Title XVI: Determining Childhood Disability Under the Functional Equivalence Rule–The "Whole Child" Approach*, 2009 WL 396031, at *7 (S.S.A. Feb. 17, 2009). While the presence of medications and accommodations support a finding of a limitation, "Social Security Rulings 09-1p and 09-2p do 'not require that a *marked* limitation be found under the listed

---

[35]   R. Doc. 20 at 9.

[36]   R. Doc. 17-1 at 23.

[37]   R. Doc. 19 at 38-41.

[38]   R. Doc. 20 at 9-10.

14

circumstances. Rather [they] require[] that a limitation be found.'" *McGrew ex rel. K.M. v. Colvin*, No. 13-237, 2014 WL 68766, at *8 (E.D. La. Jan. 8, 2014) (quoting *Scotino v. Colvin*, No. 4:12cv0674, 2013 WL 5291722, at *10 (E.D. Mo. Sept. 19, 2013) (quoting *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011))). "A finding of a marked limitation is *not* mandated simply because the child functions better with placement in special education classes or other supports." *Id.* (citing *Richardson v. Barnhart*, 136 F. App'x 463, 466 (3d Cir. 2005)). Here, the ALJ considered the evidence of N.G.'s medications and academic accommodations, and determined that while N.G. has limitations related to acquiring and using information and attending and completing tasks, they are not marked limitations.[39] The ALJ complied with the requirements of SSR 09-1P in that he found that limitations existed, and substantial evidence supported the ALJ's findings that these limitations are less than marked. Therefore, the ALJ committed no error.

---

[39] R. Doc. 16-2 at 31-34.

**IV. CONCLUSION**

    Accordingly, Campo's motion for summary judgment is DENIED and the SSA's cross-motion for summary judgment is GRANTED.

New Orleans, Louisiana, this __26th__ day of September, 2014.

                      *Sarah Vance*
                      SARAH S. VANCE
              UNITED STATES DISTRICT JUDGE